UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAPREI HARRIS,

                Plaintiff,

    v.

KING COUNTY, et al.,

                Defendants.

CASE NO. C16-1793 RSM-BAT

**REPORT AND RECOMMENDATION**

Before the Court is defendants' motion for summary judgment. Dkt. 23. The motion was originally noted for July 17, 2017, but was re-noted to provide plaintiff additional time to file his response with the Court. Dkt. 30. Plaintiff filed no response. Defendants' motion was again re-noted to allow defendants additional time to file an omitted declaration and provide plaintiff with additional time to respond to the newly filed declaration. Dkt. 32. Again, plaintiff filed no response to defendants' motion. For the reasons below, the undersigned recommends that defendants' motion for summary judgment (Dkt. 23) be granted and all claims against them be dismissed with prejudice.

**FACTS**

Daprei Harris has been incarcerated at the Department of Adult and Juvenile Detention ("DAJD") King County Correctional Facility ("KCCF") (hereinafter "the Jail"), since August 16,

REPORT AND RECOMMENDATION - 1

2016. Dkt. 27, Declaration of Samantha Kanner, Ex. A. He is currently awaiting sentencing. *Id*.

In his Amended Complaint, Mr. Harris sues King County, Dr. Benjamin Sanders, and Corrections Officer Edward Duenas with regard to injuries Mr. Harris sustained after falling down a flight of stairs while his leg was in a walking cast and he was using crutches. Dkt. 7. He alleges that Dr. Benjamin Sanders, who is in charge of all final medical decisions (including those relating to inmates on crutches), failed to authorize a bottom bunk and/or bottom tier clearance for him. He alleges that Corrections Officer Edward Duenas was responsible for supervising all movements in and out of the tier on the day that Mr. Harris fell. Mr. Harris also alleges that defendants' conduct was in direct violation of the "official policy" providing access for disabled inmates to medical, religious, and other services provided by the Jail.[1] *Id.*, pp. 4-6.

Mr. Harris was interviewed by a Jail Health Services ("JHS") nurse when he was first booked into the Jail. Dkt. 25, Declaration of Benjamin Sanders, M.D., Jail Medical Director, ¶ 8. Because he had a history of seizures, Mr. Harris was given a lower bunk restriction within the general population. According to Chris Womack, Corrections Program Administrator for the Jail, this restriction allowed Mr. Harris to be housed in general population. Dkt. 31, Declaration of Chris Womack, ¶ 4. According to Dr. Sanders, jail classifications staff generally determine where an inmate will be housed based on security screening procedures, but JHS staff (doctors, registered nurses, and advanced registered nurse practitioners) can place restrictions on where an inmate may be housed based on their medical judgment (such as making a lower tier or lower

---

[1] Mr. Harris also alleges that on October 22, 2016, Corrections Officer Wyrick, under the direction of Nurse Swean, "maliciously" removed his walking cast, crutches, extra blanket, and medical tape. Dkt. 7, p. 6. Mr. Harris also acknowledges however, that these items were returned to him less than a week later, on October 26, 2016. Attachments to the amended complaint also reflect that the medical order to allow the supplies was evaluated and renewed during this time. Id., pp. 13, 23, 33. Neither Officer Wyrick nor Nurse Swean are defendants herein.

REPORT AND RECOMMENDATION - 2

bunk restriction). *Id*., ¶ 5. With the exception of a time Mr. Harris was infracted and pending disciplinary hearing, Mr. Harris was housed in general population and assigned a lower bunk prior to his October 1, 2016 injury. Dkt. 31, Womack Decl., ¶ 6.

On October 1, 2016, Mr. Harris hurt his pinky toe while playing basketball barefoot in the jail yard. Dkt. 25, Sanders Decl., ¶ 9. JHS staff gave Mr. Harris crutches and sent him to Harborview Medical Center, where he was diagnosed with a fracture of his right fifth (pinky) toe. Medical providers at Harborview taped Mr. Harris' toe and provided him with a medical boot. They also gave him narcotic pain medication (oxycodone), a prescription that the narcotic pain medication be continued for 24 hours and recommended non-narcotic pain medication (Tylenol) be used thereafter. *Id*. JHS staff reviewed the Harborview medical records and dispensed the narcotic medication indicated to Mr. Harris for 24 hours (through 10/2/16) and dispensed Tylenol to him beginning on October 3, 2016 for the next three days. *Id*. Although there was no medical order from the Harborview doctors for Mr. Harris to continue using the crutches, he was permitted to keep the crutches when he returned from Harborview on October 1, 2016. *Id*.

When he returned from Harborview, Jail classifications staff assigned Mr. Harris to the East Wing of the 10th floor of the Jail (I0-E) in a lower bunk on the upper tier. Dkt. 31, Womack Decl., ¶ 7. He was housed in that location and was able to ambulate up and down the stairs to his cell without any complaint or incident for the next five days. Dkt. 25, Sanders Decl., ¶ 11. In Dr. Sanders' medical judgment, there was no health-related justification for a lower tier restriction to be placed on Mr. Harris on his return from Harborview. *Id.*, ¶ 10.

REPORT AND RECOMMENDATION - 3

On October 3, 2016, Mr. Harris filed an inmate medical grievance complaining that he had not received his medications that day and that he was in pain. Dkt. 7-1, p. 5. He was told that he was being given Tylenol and Ibuprofen for pain and that he had an upcoming clinic appointment. *Id.* When he questioned why he was being given Ibuprofen, Mr. Harris was advised to address the matter with health services staff. *Id.*

On October 6, 2016 at approximately 11:05 in the morning, medical staff was on the 10th floor to discuss Mr. Harris' October 4, 2016 medical grievance asking about his pain medications. Dkt. 26, Declaration of Edward Duenas, Corrections Officer, Ex. A; Dkt. 7 (Amended Complaint), p. 13. Officer Duenas opened Mr. Harris's cell door to allow Mr. Harris to see medical staff. When Officer Duenas turned around to open the door for another inmate returning from a visit, he heard a crashing noise and turned to see Mr. Harris falling down the 8-step staircase. Mr. Harris landed on the floor on his right side in front of the officer station. Dkt. 26, Duenas Decl., Ex. A. Officer Duenas called for medical staff and two Jail health nurses to render aid to Mr. Harris. *Id.* Mr. Harris was taken to Harborview Medical Center for evaluation and treatment, where Harborview doctors diagnosed Mr. Harris with a left scalp contusion and a soft tissue sprain of the left side of his neck. Dkt. 26, Sanders Decl., ¶ 12. Mr. Harris was discharged from Harborview with a recommendation that non-narcotic pain medication (Tylenol) be used to treat him. *Id.* JHS dispensed Tylenol and Advil to Mr. Harris for ten days from October 6, 2016 to October 16, 2016. *Id.*

At the time of his fall, Mr. Harris was wearing a walking cast on his right foot and was using crutches. Dkt. 7-1, pp. 3-4 (Jail Supervisor's Incident Report 10/6/16). Division Major Clark forwarded the incident report to CPA Womack with the comment "can we determine why

REPORT AND RECOMMENDATION - 4

lower tier restriction did not occur? Please follow up and advise." *Id.*, p 4. There is nothing in the record indicating that any follow up on this inquiry occurred.

When Mr. Harris returned to the Jail, JHS staff directed that a lower tier restriction be put in place so that Mr. Harris would not be housed in an upper tier. Dkt. 26, Sanders Decl., ¶ 13. JHS staff concluded that Mr. Harris' fall demonstrated him to be a fall risk. *Id.* Although he was not involved in this decision, Dr. Sanders states that in his medical judgment, it was an appropriate decision. *Id.* Based on his review of Mr. Harris' medical records, it is also Dr. Sanders' medical judgment that the pain medication dispensed by JHS was appropriate and reasonable, and that there was no health-related reason to place Mr. Harris on the medical floor of the Jail during October, 2016. *Id.*, ¶¶ 14, 15.

Dr. Benjamin Sanders was not directly involved in Mr. Harris's care until December 2016, when he was asked to consult with another JHS provider about Mr. Harris's complaints of back and neck pain. Dkt. 25, Sanders Decl., ¶ 16.

Mr. Harris attached various inmate medical grievances relating to his medication and follow-up care to his Amended Complaint. However, the Amended Complaint contains no allegations regarding the medical care he received at Harborview or the Jail. His allegations are limited to Dr. Sanders' alleged failure to approve a lower tier assignment and Officer Duenas' failure to properly supervise his movements on the upper tier. Mr. Harris seeks $3.5 million in damages, including $1 million for "negligence." Dkt. 7, p. 8.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is to be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

REPORT AND RECOMMENDATION - 5

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In this way, the summary judgment vehicle serves "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Courts apply a burden-shifting analysis in determining summary judgment. Where the non-moving party bears the burden of proving the claim at trial, the moving party can meet its initial burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (1) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden shifts to the opposing party to produce sufficient evidence to establish that a genuine dispute as to a material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

**DISCUSSION**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

REPORT AND RECOMMENDATION - 6

United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Personal participation is an essential element of a § 1983 claim. *See e.g., Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Supervisory officials cannot be held liable under a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2008). To be liable under § 1983, a person must do an affirmative act, participate in another's affirmative act, or fail to perform an act that the person is legally required to do. *Johnson v. Duffy*, 588 F.2d at 743-44. Mere knowledge of a subordinate's unconstitutional actions is not enough to establish liability. *See Iqbal*, 556 at 677. Here, there is no evidence that the named defendants personally participated in the alleged constitutional violations.

**A.     Dr. Benjamin Sanders**

Mr. Harris alleges that Dr. Sanders supervises the JHS medical staff and has the "final say" over the medical care of inmates. Dkt. 7, p. 3. Mr. Harris does not allege that Dr. Sanders had any involvement in his care or in medical decisions made regarding his care in October 2016. Summary judgment evidence reflects that in fact, Dr. Sanders was not involved in Mr. Harris' tier assignment and played no role in Mr. Harris' medical care until December 2016.

Because supervisory officials like Dr. Sanders cannot be held liable under a theory of respondeat superior and there is no evidence that he personally participated in Mr. Harris' tier

REPORT AND RECOMMENDATION - 7

assignment or medical care in October 2016, it is recommended that any claims against Dr. Sanders be dismissed.

**B.     Correctional Officer Edward Duenas**

Mr. Harris alleges that Officer Duenas supervised the movement of inmates in his unit on October 6, 2016 and that it was Officer Duenas who told him that medical personnel were present and opened the cell door so that Mr. Harris could meet with them. Dkt. 7, p. 5. Officer Duenas states that he had no knowledge of Mr. Harris' toe injury or medical status prior to seeing him on October 6, 2016. Dkt. 26, Duenas Decl., ¶¶ 6-7. At the time he opened the cell door for Mr. Harris, Officer Duenas would have been aware that Mr. Harris was in a foot cast and was using crutches because he saw Mr. Harris walk out of his cell. Dkt. 7-1, p. 1. He also checked Mr. Harris' deck card after the fall to confirm that there was no lower tier restriction on his deck card. *Id.* However, there is no evidence that Officer Duenas had anything to do with Mr. Harris' upper tier placement or that he had anything to do with Mr. Harris' fall. Rather, the summary judgment evidence reflects that Officer Duenas responded appropriately by promptly calling JHS staff to assist Mr. Harris after his fall.

Based on the foregoing, the undersigned recommends that all claims against Correctional Officer Duenas be dismissed.

**C.     King County**

A local governmental unit or municipality can be sued as a "person" under § 1983. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691 (1978). However, to prove municipal liability under 42 U.S.C. § 1983, the plaintiff must show that the unconstitutional deprivation of rights arises from a governmental custom, policy or practice. *Id*.

REPORT AND RECOMMENDATION - 8

To state a constitutional claim against a municipality, a plaintiff must: (1) identify the specific "policy" or "custom," (2) fairly attribute the policy or custom and fault for its creation to the municipality and (3) establish the necessary "affirmative link" between the identified policy or custom and the specific constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Moreover, liability exists only where the municipality acts with "deliberate indifference" to the rights of the plaintiff. *Id*. at 388.

Mr. Harris fails to identify any custom, policy or practice of King County that violated his constitutional rights. In fact, Mr. Harris alleges that the "official" policy of the Jail is to ensure that disabled people have access to the Jail's services. Dkt. 7, p. 6. Mr. Harris claims that his placement in an upper tier cell violated the Jail's policy – not that any custom, policy or practice of King County violated his rights. Moreover, as explained by Dr. Sanders, there is no prescribed checklist of medical issues that causes a person to be housed in a particular fashion and medical staff must use their professional judgment, on a case-by-case basis, to determine housing restrictions as to a particular inmate. Dkt. 25, Sanders Decl., ¶ 7.

"It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton*, 489 U.S. at 385 (quoting *Monell*, *supra*, 436 U.S. at 694). Mr. Harris has not alleged or provided evidence of any such unconstitutional government policy or custom and there is nothing to indicate that the Jail's practice of individually assessing each prisoner on a case-by-case basis to determine housing restrictions is in itself unconstitutional.

REPORT AND RECOMMENDATION - 9

Because there is no evidence that a Jail policy constituted deliberate indifference to Mr. Harris's medical needs, the undersigned recommends that Mr. Harris's claims against King County be dismissed.

**D.     Qualified Immunity**

The doctrine of qualified immunity will protect an officer from suit, even if he acted unconstitutionally, so long as a reasonable officer could have believed that his conduct was lawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, a plaintiff must establish that the defendant violated a constitutional right that was clearly established when the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds). "Whether a right is 'clearly established' for purposes of qualified immunity is an inquiry that must be undertaken in light of the specific context of the case, not as a broad general proposition. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 846 (9th Cir. 2003) (internal quotation marks and citation omitted) (abrogated in part on other grounds).

Defendants move for summary judgment on the grounds that they were not personally involved in violating Mr. Harris' constitutional rights. They further contend, however, that even if Mr. Harris were able to identify the individual(s) involved (in his placement on an upper tier), the facts of this case establish qualified immunity. However, the Court cannot determine whether unknown persons are entitled to qualified immunity as the inquiry must be undertaken in light of the specific context of the case.

REPORT AND RECOMMENDATION - 10

In addition, the Court need not reach the issue of qualified immunity as to the named defendants as there is no evidence that the named defendants violated Mr. Harris' constitutional rights. *See e.g.*, *Saucier*, 533 U.S. at 201 (overruled on other grounds) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

**E.     Washington State Medical Negligence Claim**

Defendants argue that Mr. Harris' state law medical negligence claim must also be dismissed because he has failed to provide evidence of breach of duty and causation. However, the undersigned does not read the complaint to assert such a claim. Although he seeks $1 million in damages for "negligence," Mr. Harris asserts only that the "deliberate indifference to medical needs, negligence, and discrimination" he received from Jail staff constituted cruel and unusual punishment and a violation of due process under the Eighth and Fourteenth Amendments of the federal constitution. Dkt. 7, p. 7. As explained above, summary judgment on those claims should be granted.

**CONCLUSION**

The Court recommends that Defendants' motion for summary judgment (Dkt. 23) be **GRANTED** and all claims against defendants be dismissed with prejudice.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **Tuesday, September 19, 2017.** The Clerk should note the

REPORT AND RECOMMENDATION - 11

matter for **Thursday, September 21, 2017**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed fourteen (14) pages. The failure to timely object may affect the right to appeal.

DATED this 29th day of August, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12